UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| STEVEN MICHAEL RINDAL,<br><br>    Plaintiff,<br> v.<br><br>JAY ROBERT INSLEE, et al.,<br><br>    Defendants. | CASE NO. 2:24-cv-00890-TL<br><br>ORDER ON MOTION TO DISMISS |

   This case concerns the State of Washington's suspension/revocation[1] of Plaintiff Steven Michael Rindal's license to practice chiropractic medicine. *See generally* Dkt. No. 18 ("Second Amended Complaint"). Plaintiff is proceeding *pro se*. Plaintiff makes multiple allegations against eight Defendants: (1) Jay Robert Inslee, Governor of Washington; (2) Robert Watson Ferguson, Attorney General of Washington; (3) Umair Adnan Shah, Secretary of Washington State Department of Health; (4) Washington Chiropractic Quality Assurance Commission ("CQAC"); (5) Thomas F. Graham, Washington Health Law Judge; (6) Roman S. Dixon, Washington Health Law Judge; (7) John F. Kuntz, Washington Health Law Judge; and

---

[1] Plaintiff uses the verbs "suspension" and "revocation" interchangeably when describing the administrative invalidation of his license to practice chiropractic medicine. *Compare* Dkt. No. 18 ¶ 1 ("[Plaintiff] . . . had his professional license unjustly revoked," *with id.* ¶ 5 ("Defendants' actions in suspending [Plaintiff's] license"). For the purposes of this Order, this distinction is immaterial, and the Court will not belabor the issue.

1  (8) Matthew Franklyn Wareham, Washington Health Law Judge. *Id.* at 1. Plaintiff sues the seven
2  human defendants in their official capacity as officers of the state of Washington. *Id.*[2]

3  Presently before the Court is Defendants' Motion to Dismiss Plaintiff's Second Amended
4  Complaint. Dkt. No. 28. Having reviewed the briefing and relevant record, the Court GRANTS
5  Defendants' motion to dismiss.

### I. PROCEDURAL BACKGROUND

7  Plaintiff filed his original complaint on June 21, 2024. Dkt. No. 1. On September 11,
8  2024, Plaintiff filed an Amended Complaint (Dkt. No. 14), then a Second Amended Complaint
9  one day later on September 12, 2024 (Dkt. No. 18). Although the Second Amended Complaint
10 was improperly filed, *see* Fed. R. Civ. P. 15,[3] an amended complaint supersedes and completely
11 replaces the original and any prior amended complaints. *See Hal Roach Studios, Inc. v. Richard*
12 *Feiner & Co., Inc.*, 896 F.2d 1542, 1546 (9th Cir. 1990) ("an amended pleading supersedes the
13 original"); *Loux v. Rhay*, 375 F.2d 55, 57 (9th Cir. 1967) (same). Defendants filed the instant
14 motion to dismiss based upon the Second Amended Complaint. Dkt. No. 28. Therefore, it only
15 makes sense to allow the case to proceed based upon that filing. However, Plaintiff is cautioned
16 that, although the Court will allow for some leniency when considering *pro se* filings, in this
17 Circuit "it is axiomatic that pro se litigants, whatever their ability level, are subject to the same
18 procedural requirements as other litigants." *Muñoz v. United States*, 28 F.4th 973, 978 (9th Cir.
19 2022). These procedural requirements include not only the Federal Rules of Civil Procedure, but

---

[2] Under Washington administrative law, health law judges are state officers empowered by the Secretary of Health to make "initial order[s]" in adjudicative proceedings. RCW 43.70.740; *see* RCW 18.130.

[3] Under Federal Rule of Civil Procedure 15(a)(1), "a party may amend its pleading once as a matter of course no later than: (A) 21 days after serving it, or (B) if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier." Fed. R. Civ. P. 15(a). "In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(b).

1  also this District's Local Civil Rules and this Court's Standing Order for Civil Cases. Future

2  violations may result in (1) the striking of filings that do not comply with the rules or the Court's

3  standing order; or (2) other sanctions.

## II.   FACTUAL BACKGROUND

5       This case arises out of alleged violations associated with the State of Washington's

6  revocation of Plaintiff's professional license to practice chiropractic medicine. *See* Dkt. No. 18

7  ¶¶ 1–3.

8       Plaintiff alleges that, during the COVID-19 pandemic, his license was "unjustly revoked

9  due to his principled stance on mask-wearing . . . , violating his rights under the First, Fourth,

10  Fifth, and Fourteenth Amendments to the United States Constitution." *Id.* Plaintiff brings these

11  allegations of constitutional violations under 42 U.S.C. § 1983. *Id.* ¶ 11. Additionally, Plaintiff

12  alleges state-law claims for "tortious interference with business expectancy, defamation, and

13  false light invasion of privacy." *Id.* ¶ 13. Plaintiff further alleges that Defendants violated

14  Washington's Administrative Procedure Act ("APA"), RCW 34.05. *Id.* ¶ 201.

15       Plaintiff allegedly first ran afoul of the State in July 2020, after the Department of Health

16  imposed a "statewide mandatory face covering order" in response to the COVID-19 pandemic.

17  *Id.* ¶ 35. Plaintiff, a practicing chiropractor, "chose not to mandate mask-wearing in his clinic."

18  *Id.* ¶ 36. On or about October 16, 2020, Defendant CQAC, the state body responsible for

19  regulating the chiropractic profession, *see* RCW 18.25.0151, received a complaint that Plaintiff's

20  clinic was out of compliance with the mask mandate. Dkt. No. 18 ¶ 37. Defendant CQAC

21  investigated the complaint. *Id.* ¶ 38. The investigation confirmed that Plaintiff's clinic was not

22  complying with the mask mandate, initiated disciplinary proceedings against Plaintiff and, on or

23  about October 27, 2021, suspended Plaintiff's license. *Id.* ¶¶ 40–41. Plaintiff protested CQAC's

24  actions by "sen[ding] affidavits to answer every mailed response sent by Defendants and their

agents" in CQAC's proceedings against him. *Id.* ¶¶ 46–49. However, when CQAC "demanded" a phone number for a telephonic hearing, Plaintiff did not provide it, informing the agency that it already had the number. *Id.* ¶ 44. Plaintiff also offered his conference room for the proposed hearing, but CQAC allegedly "refused [his] offer and held a hearing without [him] and without giving him proper legal notice." *Id.*

### III. PRELIMINARY MATTERS

**A.     Judicial Notice**

Both parties have requested that the Court take judicial notice of certain documents. "On a motion to dismiss, [a court] may consider materials incorporated into the complaint or matters of public record." *Coto Settlement v. Eisenberg*, 593 F.3d 1031, 1038 (9th Cir. 2010). The Ninth Circuit has "extended the doctrine of incorporation by reference to consider documents in situations where the complaint necessarily relies upon a document or the contents of the document are alleged in a complaint, the document's authenticity is not in question and there are no disputed issues as to the document's relevance." *Id.*

**1.     Defendants' Request**

Defendants request that the Court take judicial notice of documents associated with CQAC's disciplinary proceedings against Plaintiff. *See* Dkt. No. 28 at 12. These include "CQAC's Statement of Charges dated May 26, 2021" (Dkt. No. 29-1) and "Default Order dated October 27, 2021" (Dkt. No. 29-2). *Id.* Plaintiff does not object to Defendants' request. *See generally* Dkt. No. 30. Because Plaintiff's allegations derive from CQAC's administrative proceeding against him, these documents are clearly relevant. The Court thus takes judicial notice of these two records.

### 2. Plaintiff's Request

Plaintiff requests the Court take judicial notice of the Order Granting Petitioners' Motion for Summary Judgment and Denying Respondents' Motion for Summary Judgment in *Fisheries Engineers, Inc. v. Washington, et al.*, No. 18-2-04658-34 (Thurston Cnty. Super. Ct. Sept. 29, 2021), *rev'd*, No. 56285-5-II, 2023 WL 1795697, (Wash. Ct. App. Feb. 7, 2023). Dkt. No. 30-1. Plaintiff references this case in both his Second Amended Complaint (Dkt. No. 18 ¶ 41a) and in his opposition (Dkt. No. 30 at 4–5). Defendants do not object to Plaintiff's request and, in fact, discuss the case in their Reply. *See* Dkt. No. 39 at 3. As the superior-court order was referenced in Plaintiff's Second Amended Complaint and is a matter of public record, the Court will take judicial notice of the order. *See Coto Settlement*, 593 F.3d at 1038.

## B. Defendants' Legitimate Legal Authority

In his Response to Defendants' Motion to Dismiss, Plaintiff argues that Defendants Inslee and Ferguson "lacked legal authority to take any actions against Plaintiff's license after September 29, 2021." Dkt. No. 30 at 4. Plaintiff asserts that the Governor and Attorney General were found "guilty of malfeasance" in state court and, consequently, were summarily disqualified from holding their respective offices.[4] *Id.* In support of his position, Plaintiff cites to the *Fisheries Engineers* case, where the Thurston County Superior Court found that the Washington State Board of Professional Engineers & Land Surveyors' and Attorney General's "adopted interpretation and enforcement policy" of RCW 18.43—which governs the "qualifications, testing, licensure, and regulation of professional engineers and land surveyors"— violated the same statute. *Id.* (citing Dkt. No. 30-1 ¶¶ 4, 12).

---

[4] Plaintiff also raises this issue in his Second Amended Complaint. Dkt. No. 18 ¶ 41a.

The Court finds that Plaintiff's position is wholly without merit. First, the Washington Court of Appeals ultimately reversed the Superior Court's decision. *See Fisheries Eng'rs*, 2023 WL 1795697, at *6. Second, notwithstanding the Court of Appeals's reversal of the Superior Court's decision, neither Governor Inslee nor Attorney General Ferguson was found "guilty" of "malfeasance." *See generally* Dkt. No. 30-1. For one thing, *Fisheries Engineers* was a civil case; as such, the defendants' "guilt" with respect to the complained-of conduct was not at issue. *See Bruff v. Nw. Mut. Fire Ass'n*, 59 Wash. 125, 129, 109 P. 280 (1910) ("[C]ivil actions . . . have nothing to do with guilt and innocence."). For another, as Defendants point out, the word "malfeasance" makes no appearance in the Superior Court's decision. *See* Dkt. No. 39 at 3. Third, even if the Superior Court had found that the Governor and Attorney General had acted in such a way as to impugn their authority as state officers, they would remain in their jobs, with their attendant legal authority, until the successful completion of recall proceedings saw them lawfully removed. *See* RCW 29A.56.110 *et seq.*

## IV.  DISCUSSION

### A.  *Younger* Abstention

Under *Younger v. Harris*, 401 U.S. 37, 41 (1971), a district court may not hear claims for equitable relief while state proceedings regarding the same subject matter are still pending. The doctrine is often invoked in federal cases involving state-law professional licensure. *See, e.g.*, *Haywood v. Wash. State Dep't of Lab. & Indus.*, No. C23-5919, 2024 WL 1209555, at *3–4 (W.D. Wash. Mar. 21, 2024); *Ly v. Dep't of Health*, No. C16-1563, 2016 WL 7116188, at *2 (W.D. Wash. Nov. 4, 2016); *Alsager v. Bd. of Osteopathic Med. & Surgery*, 945 F. Supp. 2d 1190, 1195–96 (W.D. Wash. 2013). In the Ninth Circuit, *Younger* requires federal courts to abstain from hearing claims for equitable relief when four elements are present:

> (1) [T]here is an ongoing state judicial proceeding; (2) the proceeding implicates important state interests; (3) there is an adequate opportunity in the state proceedings to raise [federal] constitutional challenges; and (4) the requested relief seeks to enjoin or has the practical effect of enjoining the ongoing state judicial proceedings.

*Page v. King*, 932 F.3d 898, 901–02 (9th Cir. 2019). But "even if *Younger* abstention is appropriate, federal courts do not invoke it if there is a 'showing of bad faith, harassment, or some other extraordinary circumstance that would make abstention inappropriate.'" *Id.* at 902 (citation omitted). Additionally, there is a recognized "irreparable harm" exception to *Younger*, under which courts may refrain from abstention in "extraordinary circumstances where the danger of irreparable loss is both great and immediate." *World Famous Drinking Emporium, Inc. v. City of Tempe*, 820 F.2d 1079, 1082 (9th Cir. 1987).

Because CQAC has issued a final order regarding the suspension of Plaintiff's license (Dkt. No. 29-2), the Court finds that there is not an ongoing state proceeding against Plaintiff, at least with respect to the allegations in the Second Amended Complaint. *See* Dkt. No. 18 ¶ 212 (alleging that "Defendants have reached a final decision regarding [Plaintiff's] license suspension."). Consequently, *Younger* abstention is inappropriate in this case. *See Page*, 932 F.3d at 901. For their part, Defendants assert that Plaintiff's adjudication proceeding with CQAC is ongoing. Dkt. No. 28 at 13. Defendants argue that, "Through Plaintiff's [Second Amended] Complaint allegations or judicial notice of CQAC's filings, the Court can determine that CQAC's proceeding is ongoing." Dkt. No. 28 at 13.

But the Second Amended Complaint, while voluminous and unwieldly, appears for the most part to be concerned exclusively with the October 27, 2021, revocation/suspension of Plaintiff's license. *See* Dkt. No. 18 ¶ 41. The instrument that "indefinitely suspended" Plaintiff's license is captioned as, among other things, a "Final Order" (Dkt. No. 29-2 at 3), and there is no

indication in the Second Amended Complaint that Plaintiff sought judicial review or timely pursued any other avenue of appeal that would make the Order anything other than final or otherwise render it subject to amendment (*see generally* Dkt. No. 18).[5]

The Court thus construes the Second Amended Complaint as having derived from CQAC's October 27, 2021, Final Order, which indefinitely suspended Plaintiff's license to practice chiropractic medicine. The finality of this order precludes the Court from applying *Younger* abstention, and the Court cannot dismiss the action on that basis.

B.   **Collateral Estoppel**

Collateral estoppel generally prevents a party from relitigating an issue that has already been decided. It is appropriate when the following elements are met:

> (1) there was a full and fair opportunity to litigate the issue in the previous action; (2) the issue was actually litigated in that action; (3) the issue was lost as a result of a final judgment in that action; and (4) the person against whom collateral estoppel is asserted in the present action was a party or in privity with a party in the previous action.

*In re Palmer*, 207 F.3d 566, 568 (9th Cir. 2000). It is the burden of the party asserting collateral estoppel to prove that each element has been met. *Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042, 1050–51 (9th Cir. 2008).

Defendants argue that "[Plaintiff] previously challenged CQAC's same suspension of his license in *Rindal v. Inslee et al.*, #2-22-cv-01843-RSL." Dkt. No. 28 at 15. This is indeed so. *See generally Rindal v. McDermott et al.*, No. C22-1843, Dkt. No. 1 (W.D. Wash. Dec. 29, 2022). But while Plaintiff initially challenged the suspension of his license and listed Defendants Inslee,

---

[5] Defendants urge the Court to take judicial notice of records associated with a second disciplinary action against Plaintiff, for which CQAC issued a Statement of Charges on April 11, 2024, and a Prehearing Order of Default on July 23, 2024. *See* Dkt. No. 28 at 13; *see also* Dkt. No. 29-3. The Court declines to do so, as the Amended Complaint makes no mention of anything more recent than June 30, 2022.

1  Ferguson, Shah, Dixon, Wareham, Kuntz, and CQAC as defendants when he filed that action on
2  December 29, 2022, he amended his complaint some three months later and dropped all of these
3  defendants from the case. *Id.*, Dkt. No. 3 (Mar. 29, 2023) ("Amended Complaint"). This
4  amended complaint superseded and completely replaced the original. *See Hal Roach Studios*,
5  896 F.2d at 1546.

6  Because Plaintiff voluntarily dropped the seven at-issue defendants from his original
7  2022 complaint, they were not parties in the previous action, a requirement for the applicability
8  of collateral estoppel. *See Palmer*, 207 F.3d at 568. Nor were they in privity with the parties in
9  the previous action. "Privity is a legal conclusion designating a person so identified in interest
10 with a party to former litigation that he represents precisely the same right in respect to the
11 subject matter involved." *United States v. Bhatia*, 545 F.3d 757, 759 (9th Cir. 2008) (internal
12 quotation marks and citations omitted). Here, the amended complaint in the prior action named
13 seven defendants: Donald McDermott, James A. Winchester, Alan R. Souders, Sandra F.
14 Perkins, Richard A. Weyrich, Lisa M. Janicki, Peter Browning, Ronald G. Wesen, and Skagit
15 County. *Rindal*, No. C22-1843, Dkt. No. 3. The amended complaint identifies McDermott,
16 Perkins, Browning, and Wesen as "Skagit County Washington elected Officials." *Id.* ¶ 43.
17 According to the amended complaint, Winchester is an individual who "filed a false affidavit
18 with the Washington State Department of Health claiming that Plaintiff had violated the law by
19 not wearing a mask." *Id.* ¶ 44. Souders is an individual who "falsely claimed Plaintiff threatened
20 Winchester." *Id.* ¶ 27. And Skagit County is one of Washington state's 39 counties. RCW
21 36.04.290. It does not appear that any of the individual defendants are, like Inslee, Ferguson, and
22 Shah, state-level executive officers, nor does it appear that any of the individual defendants are,
23 like Dixon, Graham, Kuntz, and Wareham, health law judges. And Skagit County is a political
24 subdivision of the state, not an administrative agency like CQAC. *Compare* RCW 18.25.0151,

*with* RCW 36.04.290. In short, none of these defendants represented "precisely the same right in respect to the subject matter involved" as Defendants in the instant case. *Bhatia*, 545 F.3d at 759. There is thus no privity between the two slates of defendants. Therefore, Defendants do not establish the fourth element of collateral estoppel, and the Court cannot apply it here.[6]

C. **Failure to State a Claim**

A defendant may seek dismissal when a plaintiff fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). In reviewing a Rule 12(b)(6) motion to dismiss, the Court takes all well-pleaded factual allegations as true and considers whether the complaint "state[s] a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). While "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are insufficient, a claim has "facial plausibility" when the party seeking relief "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 672. "When reviewing a dismissal pursuant to Rule . . . 12(b)(6), 'we accept as true all facts alleged in the complaint and construe them in the light most favorable to plaintiff[ ], the non-moving party.'" *DaVinci Aircraft, Inc. v. United States*, 926 F.3d 1117, 1122 (9th Cir. 2019) (alteration in original) (quoting *Snyder & Assocs. Acquisitions LLC v. United States*, 859 F.3d 1152, 1156–57 (9th Cir. 2017)).

For various reasons, Plaintiff's Second Amended Complaint does not survive Defendants' Rule 12(b)(6) challenge. The Court will explain each basis for dismissal in turn.

---

[6] The Court need not address whether the issues in this case were actually litigated in the prior action, as Defendants have already failed to establish one of the other elements needed to apply collateral estoppel.

1. **Immunity and Personhood Under Section 1983**

In a Section 1983 claim, a plaintiff must demonstrate: "(1) a violation of rights protected by the Constitution or created by federal statute, (2) proximately caused (3) by conduct of a 'person' (4) acting under color of state law." *Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991). But a defendant can be exempt from Section 1983 liability if they are immune from suit, or if they are not considered to be a "person" under Section 1983. *See Miller v. Gammie*, 335 F.3d 889, 895–96 (9th Cir. 2003) (en banc) (immunity); *Gilbreath v. Cutter Biological, Inc.*, 931 F.2d 1320, 1327 (9th Cir. 1991) (citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 64–65 (1989)) (personhood under § 1983). On a motion to dismiss, if a defendant is categorically excluded from the statute's scope, the claim necessarily fails as a matter of law and dismissal is appropriate. *See, e.g.*, *Jackson v. Carey*, 353 F.3d 750, 758 (9th Cir. 2003) (affirming dismissal of claims against defendants that were "not persons within the meaning of § 1983" (internal quotation marks and citation removed)); *Lacey v. Maricopa Cnty.*, 693 F.3d 896, 934 (9th Cir. 2012) (finding that defendant who was entitled to absolute immunity "may not be sued under § 1983").

   a. *Health Law Judges*

Plaintiff's claims against the four health law judges—*i.e.*, Defendants Dixon, Graham, Kuntz, and Wareham—cannot be sustained. "Absolute immunity extends to agency officials when they preside over hearings, initiate agency adjudication, or otherwise perform functions analogous to judges and prosecutors." *Romano v. Bible*, 169 F.3d 1182, 1186 (9th Cir. 1999). "Judges and those performing quasi-judicial functions are absolutely immune from damages for acts performed *within their judicial capacities*." *Id.* (emphasis in original). Within the professional-licensure context at issue here, the Ninth Circuit has held that, "There is no question that acts occurring during [a] [state medical board's] disciplinary hearing process fall within the

scope of absolute immunity; holding hearings, taking evidence, and adjudicating are functions that are inherently judicial in nature." *Mishler v. Clift*, 191 F.3d 998, 1008 (9th Cir. 1999). In analyzing absolute immunity, a court examines the specific function that the judges were performing at the time of the complained-of conduct. *Id.* Put differently, the fact that a defendant bears the title of "judge" is of no import if they were not actually performing the functions of a judge.

Here, Plaintiff admits that these health law judges were performing in "their roles as adjudicators." Dkt. No. 18 ¶ 228c.[7] And Plaintiff singles out Defendant Dixon as the official who "suspended [Plaintiff's] license indefinitely, citing 'unprofessional conduct' related to his mask policy." *Id.* ¶ 41. The language of the Second Amended Complaint demonstrates that these four defendants were performing acts squarely within the "disciplinary hearing process." *Mishler*, 191 F.3d at 1008.

Therefore, the Court finds that Defendants Dixon, Graham, Kuntz, and Wareham are absolutely immune from suit, as they were admittedly performing acts "acts within their judicial capacities." *See Dang v. Johnson*, No. C21-5544, 2023 WL 4106060, at *10 (W.D. Wash. June 21, 2023) ("After reviewing Washington's administrative and procedural scheme for the regulation of medical professionals, the Commission, its members, professional staff and counsel function in a sufficiently judicial and prosecutorial capacity to entitle them to absolute immunity." (internal quotation marks and citation removed)). Moreover, given Plaintiff's failure to rebut Defendants' assertion that Defendants Dixon, Graham, Kuntz, and Wareham are, as judges acting as judges, immune from suit here, the Court finds it appropriate to DISMISS WITH PREJUDICE all of Plaintiff's claims against them.

---

[7] Plaintiff duplicated some paragraph numbers in the Second Amended Complaint. This reference is to Paragraph 228 in Section IX of the complaint (not Paragraph 228 in Section VIII of the complaint).

        **b.**       *Defendant CQAC*

Defendants argue that, because state agencies are not subject to Section 1983 actions, Defendant CQAC should be dismissed from Plaintiff's claims alleging constitutional violations—*i.e.*, Counts I, II, III, IV, and IX. Dkt. No. 28 at 17. The Court agrees. "State agencies . . . are not 'persons' within the meaning of § 1983, and are therefore not amenable to suit under that statute." *Maldonado v. Harris*, 370 F.3d 945, 951 (9th Cir. 2004) (citing *Will*, 491 U.S. at 70 (1989)). Plaintiff, then, "ha[s] no 'cause of action' against [CQAC] under § 1983." *Id.* Accordingly, Counts I, II, III, IV, and IX, as against Defendant CQAC, are DISMISSED WITH PREJUDICE.

        **c.**       *Defendants Inslee, Ferguson, and Shah*

Further, where a plaintiff sues for damages under Section 1983, "neither a State nor its officials acting in their official capacities are 'persons' under § 1983." *Will*, 491 U.S. at 70; *Pittman v. Or., Emp. Dep't*, 509 F.3d 1065, 1072 (9th Cir. 2007). Thus, to the extent that Defendants Inslee, Ferguson, and Shah are sued for damages in their "official capacities" as state officers, *see* Dkt. No. 18 at 1, 56, these claims must be DISMISSED WITH PREJUDICE.

What remain are Plaintiff's constitutional claims for injunctive relief against Defendants Inslee, Ferguson, and Shah. In a Section 1983 complaint, a plaintiff must "allege facts showing how the individually named defendants caused or personally participated in causing the alleged harm." *Dahlstrom v. Life Care Ctrs. Of Am., Inc.*, No. C21-1465, 2023 WL 4893491, at *3 (W.D. Wash. Aug. 1, 2023). Plaintiff's Second Amended Complaint does not allege such facts.

Here, Defendants assert that these Defendants did not have any duty to interfere in CQAC's administrative proceedings against Plaintiff. Dkt. No. 28 at 16. And, indeed, Plaintiff is vague with respect to which specific acts or omissions on the part of these Defendants translate into the constitutional causes of action alleged in the Second Amended Complaint. After all,

1  none of these Defendants' names appears on the administrative instruments that effectively
2  charged, then suspended, Plaintiff's chiropractic license. *See* Dkt. Nos. 29-1, 29-2. Not
3  surprisingly, then, Defendants point out that "Plaintiff's claim that these Defendants'
4  noninterference constitutes liability for torts and civil rights violations is unsupported by any
5  facts or law imposing relevant duties on Defendants." Dkt. No. 28 at 17. Moreover, Plaintiff's
6  response does not actually provide the legal or factual authority that Defendants claim is missing.
7  *See* Dkt. No. 30 at 8.

8        The Court thus agrees with Defendants that Plaintiff has not provided sufficient legal
9  authority to demonstrate that Defendants Inslee, Ferguson, and Shah had any affirmative duty to
10 intervene or otherwise personally involve themselves in Plaintiff's administrative proceeding
11 regarding his professional license. (And even if these three Defendants *were* personally involved,
12 Plaintiff has not demonstrated it beyond recitation of conclusory assertions that are insufficient
13 to sustain a cause of action here.) With respect to Counts I, II, III, IV, and IX, as against
14 Defendants Inslee, Ferguson, and Shah, then, the Court finds that Plaintiff has failed to meet his
15 burden to state a claim under *Iqbal* and *Twombly*. Still, the Court notes that, notwithstanding
16 their assertion to the contrary, *see* Dkt. No. 28 at 18–19, Defendants have not adequately
17 demonstrated that Plaintiff cannot cure the deficiencies in his Second Amended Complaint.
18 Therefore, the Court DISMISSES WITHOUT PREJUDICE Counts I, II, III, IV, and IX, as against
19 Defendants Inslee, Ferguson, and Shah, for injunctive relief.
20 //
21 //
22 //
23 //
24 //

1  **2.      Statutory Prerequisites for Asserting Tort Claims Against the State**

2  Next, Defendants assert that Plaintiff's state-law claims—*i.e.*, Counts V, VI, and VII[8]—

3  should be dismissed, because Plaintiff did not comply with the statutory requirement that he

4  "first file a tort claim with the State Office of Risk Management prior to filing a complaint." Dkt.

5  No. 28 at 18 (citing RCW 4.92.100). The Court agrees.

6  These claim-filing requirements are jurisdictional, mandatory, and operate as a condition

7  precedent to a suit against government bodies and employees. *See Mangaliman v. Wash. State*

8  *DOT*, No. C11-1591, 2014 WL 1255342, at *4 (W.D. Wash. Mar. 26, 2014) (citing *Levy v. State*,

9  91 Wn. App. 934, 942, 957 P.2d 1272 (1998)). If a plaintiff fails to comply with these claim-

10 filing requirements, then dismissal of the complaint is proper. *See Amo v. Harborview Med. Ctr.*,

11 No. 79479-5-I, 2020 WL 1917461, at *3–4 (Wash. Ct. App. Apr. 20, 2020) ("[B]efore filing her

12 complaint for medical negligence against Harborview and its employee, Amo was required to

13 file a claim with the office of risk management in Olympia, pursuant to RCW 4.92.110 and

14 RCW 4.92.210. Because she failed to do so, the trial court properly dismissed the complaint."),

15 *review denied*, 196 Wn.2d 1010, 473 P.3d 258 (2020). This Court has repeatedly seen fit to

16 dismiss claims on this statutory basis. *E.g.*, *Rogers v. Howard*, No. C21-5311, 2024 WL

17 3316912, at *9–10 (W.D. Wash. May 29, 2024); *Jones v. Univ. of Wash. Med.*, No. C23-1154,

18 2023 WL 6060555, at *1 (W.D. Wash. Aug. 21, 2023); *Mangaliman*, 2014 WL 1255342, at *4.

19 For his part, Plaintiff's Second Amended Complaint contains no assertions or citations to

20 evidence that would indicate that he complied with the claim-filing requirements. *See generally*

21

---

22
23  [8] In their Motion to Dismiss, Defendants discuss Count VIII, "Violation of Washington Administrative Procedure Act" (Dkt. No. 18 ¶¶ 198–202), as a tort claim. Dkt. No. 28 at 18. Violation of the APA, however, is not tortious conduct. *See Chi. Title Ins. Co. v. Wash. State Off. of Ins. Comm'r*, 178 Wn.2d 120, 143, 309 P.3d 372 (2013) (noting distinction between tort cases and judicial review of administrative action). The Court will examine Count
24 VIII in Section III.D.3 *infra*.

1   Dkt. No. 18. Plaintiff's Response to Defendants' Motion to Dismiss attempts to rebut

2   Defendants' position by asserting, "The requirement to file a tort claim under RCW 4.92.100

3   does not apply to actions challenging the authority of state officials to act." Dkt. No. 30 at 14.

4   But this argument is unavailing here, as Plaintiff's Second Amended Complaint does more than

5   just challenge the authority of state officials to act. In making claims of tortious interference,

6   defamation, and false light, Plaintiff alleges that Defendants affirmatively committed torts

7   against him. *See* Dkt. No. 18 ¶¶ 178–197. The statutory requirement thus applies, and Plaintiff's

8   claims are, consequently, deficient. Therefore, Counts V, VII, and VII are DISMISSED WITHOUT

9   PREJUDICE, as against all Defendants.

10              3.      **Timeliness of APA Cause of Action**

11          As it does with Counts VI, VII, and VII, the Court considers Count VIII under its

12  supplemental jurisdiction to hear state-law claims that are part of the "same case or controversy"

13  as Plaintiff's federal-question claims. *See* 28 U.S.C. § 1367(a); *see also City of Chicago v. Int'l*

14  *Coll. of Surgeons*, 522 U.S. 156, 169 (1997) ("Nothing in § 1367(a) suggests that district courts

15  are without supplemental jurisdiction over claims seeking . . . review of local administrative

16  determinations.") In Washington, "[a]n appeal from an administrative tribunal invokes the

17  appellate, rather than the general, jurisdiction of the superior court. Acting in its appellate

18  capacity, the superior court is of limited statutory jurisdiction, and all statutory procedural

19  requirements must be met before jurisdiction is properly invoked." *Skagit Surveyors & Eng'rs,*

20  *LLC v. Friends of Skagit Cnty*, 135 Wn.2d 542, 555, 958 P.2d 962 (1998)). Full compliance with

21  RCW 34.05.542(2), which imposes the 30-day deadline on petitions for judicial review of

22  agency orders, "is a necessary condition for appellate jurisdiction." *Union Bay Pres. Coal. v.*

23  *Cosmos Dev. & Admin. Corp.*, 127 Wn.2d 614, 617, 902 P.2d 1247 (1995)).

24

1    Count VIII, which alleges that Defendants violated the APA, is untimely. Judicial review

2    is therefore precluded on jurisdictional grounds. "A petition for judicial review of an order shall

3    be filed with the court and served on the agency, the office of the attorney general, and all parties

4    of record within thirty days after service of the final order." RCW 34.05.542(2). Plaintiff's

5    license was suspended on October 27, 2021. Dkt. No. 18 ¶ 41. Per the APA, then, a petition for

6    judicial review could have been filed no later than November 26, 2021. Plaintiff filed his original

7    complaint in this Court on June 21, 2024, some 31 months too late. *Id.* "Dismissal is an

8    appropriate response to noncompliance" with APA deadlines. *Rahman v. Wash. State Dep't of*

9    *Emp. Sec.*, No. 72396-1-I, 2015 WL 4518347, at *2 (Wash. Ct. App. July 27, 2015). Because

10   Plaintiff cannot cure this defect, the Court DISMISSES WITH PREJUDICE Count VIII, as against all

11   Defendants.

12   **D.    Dismissal With and Without Prejudice**

13   "[A] party is not entitled to an opportunity to amend his complaint if any potential

14   amendment would be futile." *Mirmehdi v. United States*, 689 F.3d 975, 985 (9th Cir. 2012).

15   Although the Court's Order dismisses the entirety of Plaintiff's Second Amended Complaint, the

16   Court finds that some, but not all, of Plaintiff's allegations could be amended into viable claims.

17   As to the Health Law Judge defendants, these Defendants' absolute immunity from suit

18   renders futile any possible attempt to cure the defects in the allegations against them. *See supra*

19   Section IV.C.1.a. Accordingly, Counts I, II, III, IV, V, VI, VII, VIII, and IX, as against

20   Defendants Dixon, Graham, Kuntz, and Wareham, are dismissed with prejudice.

21   As to Defendants Inslee, Ferguson, and Shah, the Court finds that eight of the nine claims

22   against them are deficient, yet curable—but not, however, to the extent that the Section 1983

23   claims seek damages. *See supra* Section IV.C.1.c. Accordingly, as to Defendants Inslee,

24   Ferguson, and Shah, to the extent that they seek injunctive relief, Counts I, II, III, IV, and IX are

dismissed without prejudice. But to the extent that Counts I, II, III, IV, and IX seek damages, these Counts are dismissed with prejudice. Counts V, VII, and VII, the state-law tort claims, are not fatally flawed and, as such, are dismissed without prejudice. *See supra* Section IV.C.2. Count VIII, the untimely APA claim, is incurable and, accordingly, is dismissed with prejudice. *See supra* Section IV.C.3.

As to Defendant CQAC, no amendment could render CQAC a "person" for the purposes of Section 1983–based liability. Accordingly, Counts I, II, III, IV, and IX, as against Defendant CQAC, are dismissed with prejudice. *See supra* Section IV.C.1.b. But Counts V, VI, and VII, the state-law tort claims, are not fatally flawed and are dismissed without prejudice. *See supra* Section IV.C.2. Count VIII, the untimely APA claim, is incurable and, accordingly, is dismissed with prejudice. *See supra* Section IV.C.3.

## V.   CONCLUSION

Based on the foregoing, the Court GRANTS Defendants' Motion to Dismiss (Dkt. No. 28). Accordingly, the Court ORDERS:

(1) Counts I, II, III, IV, V, VI, VII, VIII, and IX, as against Defendants Dixon, Graham, Kuntz, and Wareham are DISMISSED WITH PREJUDICE.

(2) Count VIII, as against all Defendants, is DISMISSED WITH PREJUDICE.

(3) Counts I, II, III, IV, and IX, as against Defendant CQAC, are DISMISSED WITH PREJUDICE.

(4) Counts I, II, III, IV, and IX, as against Defendants Inslee, Ferguson, and Shah in their official capacities, *for damages*, are DISMISSED WITH PREJUDICE. Counts I, II, III, IV, and IX, as against Defendants Inslee, Ferguson, and Shah in their official capacities, *for injunctive relief*, are DISMISSED WITHOUT PREJUDICE.

    (5)    Counts V, VI, and VII, as against Defendants Inslee, Ferguson, Shah, and CQAC, are DISMISSED WITHOUT PREJUDICE.

    (6)    Should Plaintiff believe he has the facts to file a Third Amended Complaint consistent with this Order, he SHALL file the amended complaint **by January 3, 2025**.

Dated this 3rd day of December 2024.

Tana Lin
United States District Judge