1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

STEVEN MICHAEL RINDAL,

                    Plaintiff,

          v.

ROBERT WATSON FERGUSON et al.,

                    Defendants.

CASE NO. 2:24-cv-00890-TL

ORDER ON MOTION FOR
EXTENSION OF TIME AND FOR
LEAVE TO FILE AMENDED
COMPLAINT

This matter is before the Court on pro se Plaintiff Steven Michael Rindal's "Motion for Extension of Time and Leave to File Amended Complaint with Respectful Apology." Dkt. No. 70. On May 9, 2025, the Court dismissed this case without prejudice and entered judgment; the case has been closed since then. *See* Dkt. Nos. 68 (order of dismissal), 69 (judgment). Because judgment has been issued, the Court construes Plaintiff's motion as a motion for relief from a judgment or order under Federal Rule of Civil Procedure 60(b). *See GS Holistic, LLC v. Ranya & Dania LLC*, No. C23-5180, 2023 WL 2787169, at *1 (W.D. Wash. Apr. 5, 2023) (construing the plaintiff's post-judgment motion to "deem its response to the court's order to

show cause timely filed" as a motion for relief from judgment under Rule 60(b)(1)). Having reviewed Plaintiff's motion, Defendants' response (Dkt. No. 72), and the relevant record, the Court DENIES the motion.

## I.    BACKGROUND

The Court assumes familiarity with the factual and procedural background of this case and will recite only the most recent procedural developments here. *See* Dkt. No. 66 (Order on Motion to Dismiss) at 2–4. On March 6, 2025, the Court granted Defendants' Motion to Dismiss (Dkt. No. 60) and dismissed all of Plaintiff's claims. *See* Dkt. No. 66 at 14. The Court afforded Plaintiff "one final opportunity to amend his complaint" and ordered Plaintiff to file a Fourth Amended Complaint no later than April 7, 2025. *Id.* The Court advised, "Should Plaintiff fail to file a viable pleading, his case will be dismissed with prejudice." *Id.*

The deadline lapsed without any action from Plaintiff, and on April 21, 2025, the Court issued an order to show cause as to why the case should not be dismissed. Dkt. No. 67. The Court ordered Plaintiff to either respond to the Order or, alternatively, file a Fourth Amended Complaint. *Id.* at 1–2. The Court imposed a deadline of May 5, 2025. *Id.* at 2. Once again, the Court emphasized, "**If Plaintiff fails to respond to this Order by May 5, 2025, the case will be dismissed.**" *Id.* (boldface in original). That deadline also lapsed without any action from Plaintiff, and on May 9, 2025, the Court dismissed the case without prejudice and entered judgment. Dkt. Nos. 68, 69. The Clerk of Court closed the case.

On May 27, 2025, Plaintiff filed the instant motion. Plaintiff now moves to vacate the Court's dismissal and provide him with both an extension of time and leave to file an amended complaint. Dkt. No. 70 at 1–2. Plaintiff asserts that his failure to comply with the Court's deadlines was due to "a confluence of medical necessity and a procedural breakdown in notice."

*Id.* at 2. On May 30, 2025, Defendants timely responded. Dkt. No. 72. Plaintiff did not file a reply.

## II.    LEGAL STANDARD

Under Federal Rule of Civil Procedure 60(b)(1), a court may relieve a party from a final judgment on the basis of "mistake, inadvertence, surprise, or excusable neglect." The term "excusable neglect" "covers cases of negligence, carelessness and inadvertent mistake." *Bateman v. U.S. Postal Serv.*, 231 F.3d 1220, 1224 (9th Cir. 2000); *see Briones v. Riviera Hotel & Casino*, 116 F.3d 379, 380–81 (9th Cir. 1997)). Courts use a four-factor "equitable test" to determine whether neglect is excusable under Rule 60(b)(1). *See Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 395 (1993); *Briones*, 116 F.3d at 381. The four factors of the so-called "*Pioneer*" test" are: "(1) the danger of prejudice to the non-moving party; (2) the length of the filing delay and its potential impact on the proceedings; (3) the reason for the filing delay; and (4) whether the moving party acted in good faith." *Washington v. Ryan*, 833 F.3d 1087, 1098 (9th Cir. 2016) (citing *Pioneer*, 507 U.S. at 395). "A district court must fully consider these factors in every case; [the Ninth Circuit] ha[s] explicitly rejected per se rules for determining whether a mistake is excusable." *Id.* Still, the "four enumerated factors . . . are not an exclusive list." *Garden v. City of Los Angeles*, No. 20-56192, 2021 WL 5823711, at *2 (9th Cir. Dec. 9, 2021). "[T]he determination of whether a party's neglect is excusable 'is at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission.'" *Briones*, 116 F.3d at 382 (quoting *Pioneer*, 507 U.S. at 395).

## III.    DISCUSSION

### A.    The Parties' Positions

Plaintiff characterizes his failure to respond to the Court's orders as excusable neglect. *See* Dkt. No. 70 at 3. He explains that his "non-response to the Court's orders stemmed from

1    extraordinary circumstances." *Id.* Namely, between March 1, 2025, and May 17, 2025, Plaintiff

2    "was compelled to travel out of state for urgent medical reasons, professional obligations, and

3    family medical issues, which prevented [him] from accessing mail or monitoring legal

4    proceedings at [his] address" in Mount Vernon, Washington. Dkt. No. 71 (Rindal Decl.) ¶ b.

5    Specifically, Plaintiff details that he obtained medical treatment in Costa Rica; attended a

6    medical conference in Wisconsin; and attended to family medical issues in Oklahoma. *Id.* ¶¶ c–e.

7           Because Plaintiff has "rejected electronic service due to cybersecurity risks," he "relie[s]

8    solely on U.S. mail" to keep apprised of court filings and other developments in his case. Dkt.

9    No. 70 at 3. Plaintiff asserts that when he returned home to Mount Vernon on May 17, 2025, he

10   checked his "accumulated mail and found no notices from the Court regarding Dkt. Nos. [*sic*] 66

11   (March 6, 2025) or Dkt. 67 (April 21, 2025)." Dkt. No. 71 ¶ g. Plaintiff asserts that, as of May

12   21, 2025, he had not received copies of the Court's orders. *Id.* ¶ i.

13          For their part, Defendants argue that, "[w]hile the Plaintiff provides a reason for [his]

14   delay, his reasons do not constitute excusable neglect." Dkt. No. 72 at 4. "Plaintiff was aware

15   that the Court would issue a decision on Defendants' motion [to dismiss], yet he made no efforts

16   to communicate with Defendants' counsel or the Court of any necessary medical procedure prior

17   to the Court issuing a ruling." *Id.* Defendants assert that "Plaintiff had the duty to inform this

18   Court of his unavailability or request an extension on this while this case was pending." *Id.* at 5.

19   Further, Defendants argue that they will be prejudiced if this case is re-opened. *See id.* "[T]he

20   Court has already dismissed this case," Defendants assert, "and Plaintiff has other remedies in

21   pursuing his case." *Id.* "Plaintiff had at least three opportunities to amend his Complaint to

22   articulate the claims in his Complaint, [but] [e]ven upon receiving a fourth opportunity to amend

23   his Complaint, he chose to put other obligations such as a medical conference as a priority over

24   his lawsuit." *Id.* at 6.

**B.    The *Pioneer* Test**

The Court examines each *Pioneer* factor, as well as any other relevant circumstances, in turn.

**1.    The Danger of Prejudice to the Non-moving Party**

Defendants assert that they "will be prejudiced if the Court vacates its Order of Dismissal considering the Court has already dismissed his case and Plaintiff has other remedies in pursuing his case." Dkt. No. 72 at 5. Defendants do not elaborate what Plaintiff's "other remedies" might be, but given that the Court dismissed several of Plaintiff's claims *without* prejudice (*see* Dkt. No. 66 at 14), Plaintiff is not prohibited from filing a new case based on these claims. But the Court agrees that Defendants "would likely suffer some prejudice if the court grants [Plaintiff's] motion[,] because [they] would have to recommence litigating this case at additional expense and after a delay of several months." *Odegaard v. VCA Crown Hill Animal Hosp.*, No. C09-740, 2010 WL 1875807, at *2 (W.D. Wash. May 10, 2010).

Moreover, Plaintiff has asserted, "My § 1983 claims are critical to preserving my chiropractic career against alleged violations by the Washington State Chiropractic Quality Assurance Commission ['CQAC'], and I am committed to prosecuting them diligently." Dkt. No. 71 ¶ j. This is in direct contravention to the Court's March 6, 2025, Order, which, in dismissing Plaintiff's Section 1983 claims against CQAC with prejudice, expressly barred Plaintiff from repleading them. *See* Dkt. No. 66 at 14. Plaintiff's frank disregard for the Court's instructions would prejudice Defendants by forcing them to spend additional public resources relitigating issues that this Court laid to rest months ago. *See Georgiou Studio, Inc. v. Boulevard Inv., LLC*, 663 F. Supp. 2d 973, 978 (D. Nev. 2009) (finding undue prejudice against the defendant where the plaintiff's "new claims [were] in part an attempt to relitigate the claims that were already adjudicated").

Finally, Plaintiff did not file a reply brief in support of his motion and provided no rebuttal to Defendants' argument regarding prejudice. Under Local Civil Rule 7(b)(2), the Court treats this failure as a concession that Defendants' assertions have merit. *See Peoples Bank v. P/C Ambassador of the Lake*, No. C16-1403, 2017 WL 368341, at *1 (W.D. Wash. Jan. 25, 2017) (citing LCR 7(b)(2)).

Therefore, this factor weighs against a finding of excusable neglect.

**2.      The Length of the Filing Delay and Its Potential Impact on the Proceedings**

Plaintiff asserts that "[t]he delay from the May 9th order to this filing [on May 27, 2025,] is minimal, with no impact on early-stage proceedings." Dkt. No. 70 at 5. Defendants do not rebut Plaintiff's assertion and do not discuss the second *Pioneer* factor in their briefing, thus conceding that the delay caused by Plaintiff's omission was, and is, minimal. *See* LCR 7(b)(2).

Therefore, this factor weighs in favor of a finding of excusable neglect.

**3.      The Reason for the Filing Delay**

Plaintiff offers two explanations for his failure to respond to the Court's Orders. First, Plaintiff asserts that he was away from his home and, consequently, did not have access to his postal mail. *See* Dkt. No. 71 ¶¶ b–e. Second, Plaintiff asserts that, upon returning home, he checked his mail and "found no notices from the Court" regarding the Orders to which he was obligated to respond. *Id.* ¶ g.

As to Plaintiff's first reason, assuming that Plaintiff actually was away from home for the entirety of his claimed absence—an assumption, it seems, not wholly warranted, *see infra* Section III.B.5—litigation is not simply paused when a party is out of town. "The Court expects the parties to confer about significant periods of unavailability." LCR 83.2(c). Moreover, such unavailability "do[es] not alter dates set by the Court or civil rules." *Id.* A party may "request[] relief from a deadline due to a scheduling difficulty." *Id.* The Court is sympathetic to Plaintiff's

need for medical care and his required presence as primary support to a family member

undergoing medical issues.[1] But even though Plaintiff knew that Defendants had moved to

dismiss the lawsuit (*see* Dkt. No. 72 at 4–5) in which "his license and livelihood h[ung] in the

balance" (Dkt. No. 70 at 5), Plaintiff did nothing to ensure his continued participation the case;

he simply left town and made himself unreachable by Defendants and the Court. Plaintiff has

chosen to rely on a single, nonportable line of communication between himself and the Court—

i.e., U.S. Mail—and the Court finds that it is beyond careless to abandon it amidst pending

litigation. Plaintiff knew that leaving his mailbox behind would render him incommunicado with

the Court yet, by his own admission, he took actions that left him unable to "monitor[] legal

proceedings" in his case. Dkt. No. 71 ¶ b. This is not mere carelessness or negligence.

As to Plaintiff's second reason, the Court finds Plaintiff's due process arguments

disingenuous. As discussed above, Plaintiff's non-consent to electronic service rendered U.S.

Mail Plaintiff's sole line of communication with the Court. It was Plaintiff, however, who

admittedly "sever[ed] access to his mail" when he left home. Dkt. No. 70 at 3. That is to say,

although the Court duly mailed Plaintiff the Orders dated March 6, 2025, and April 21, 2025,

"via USPS," Plaintiff could not have received them in time to respond before their respective

deadlines. *See* Dkt. Nos. 66, 67.[2] By the time Plaintiff re-opened his lifeline to the Court upon

his May 17, 2025, return home, he had already missed both deadlines to respond to the Court's

Orders, and his case had been closed for four days. In other words, by voluntarily putting himself

in a position where he was unable to "monitor[] legal proceedings" until May 17, 2025 (Dkt.

---

[1] The Court is less sympathetic to Plaintiff's citation of "professional duties" as an excuse for his non-participation in his lawsuit. Dkt. No. 71 ¶ d.

[2] Plaintiff asserts without elaboration that his daughter "monitored" his mail. Dkt. No. 71 ¶ g. But Plaintiff's daughter is not Plaintiff's agent or representative and, in any event, she would not have been entitled to receive mail addressed to Plaintiff. *See* 18 U.S.C. § 1702.

No. 71 ¶ b), Plaintiff created circumstances under which it would have been impossible for him to timely respond to the Court's Orders. The Court further notes that while Plaintiff asserts he did not receive the orders, none of the mail sent to him by the Court has been returned as undeliverable or undelivered. *See generally* Docket.

Further, Plaintiff states that he learned that his case had been dismissed when "a friend with PACER[3] access revealed the dismissal." Dkt. No. 70 at 3. This admission that Plaintiff had a friend with PACER access make his argument even more disingenuous. Again, knowing that "his license and livelihood h[ung] in the balance" (*id.* at 5), Plaintiff had an easy way to diligently—and remotely—keep up with this case during his absence: He could have had the friend check electronic filings in this case and apprise him of any developments.

Therefore, this factor weighs against a finding of excusable neglect.

### 4.    Whether the Moving Party Acted in Good Faith

Plaintiff asserts that his "prompt filing, explicit mail request, and diligence reflect good faith." Dkt. No. 70 at 5. Defendants do not address whether or not Plaintiff acted in good faith in their response (*see generally* Dkt. No. 72), thereby conceding that Plaintiff's position has merit. *See* LCR 7(b)(2).

Therefore, this factor weighs in favor of a finding of excusable neglect. *See Pincay v. Andrews*, 389 F.3d 853, 862 (9th Cir. 2004) (Kozinksi, J., dissenting) ("[B]ad faith can sink an excusable neglect claim, and good faith is nothing but the absence of this negative.").

### 5.    Other Relevant Circumstances

The *Pioneer* factors are non-exclusive, and the Court "take[s] account of all relevant circumstances surrounding" Plaintiff's omission. *Briones*, 116 F.3d at 382. Plaintiff's assertion

---

[3] Public Access to Court Electronic Records.

of excusable neglect founders on substantial inconsistencies between Plaintiff's verbal assertions and his actions. Plaintiff, despite his reference to "extraordinary hardships" (Dkt. No. 70 at 1) and representation that he was cut off from his mail (Dkt. No. 71 ¶ b), appears to have been quite able to participate in other litigation during the time period at issue in his motion. On March 14, 2025, for example, while Plaintiff's "access to his mail" was purportedly "sever[ed]" due to "out-of-state travel" (Dkt. No. 70 at 3), Plaintiff mailed—from Washington—a civil complaint to the Seattle courthouse and initiated the matter of *Rindal v. Verge*, No. C25-523. Complaint at 6 (certified mail postmark), *Rindal v. Verge* (W.D. Wash. Mar. 20, 2025), Dkt. No. 1. In another ongoing case filed by Plaintiff in this District, *Rindal v. Neidzwski*, No. C24-1805, Plaintiff mailed submissions to the court on March 1, 2025; March 31, 2025; April 4, 2025; and April 12, 2025. *Rindal v. Neidzwski*, No. C24-1805, Dkt. Nos. 17, 22, 25, 31. Although the latter three submissions list a non-party's name in the return address, the return address is Plaintiff's mailing address, and two of the submissions were signed by Plaintiff. These filings evidence both access to mail and capacity to participate in litigation in this District, even as he was purportedly out of the state. All of this postal traffic between Plaintiff and the District Court in other cases tends to indicate that Plaintiff's non-participation in the instant case stemmed from a purposeful decision, not a series of unfortunate events.

Plaintiff also asserts that his pro se status entitles him to a particular leniency. Dkt. No. 70 at 2. In support of his assertion, Plaintiff cites *Haines v. Kerner*, 404 U.S. 519, 520 (1972), where the Supreme Court held that pro se pleadings are "h[eld] to less stringent standards than former pleadings drafted by lawyers." But while it is true that this Court provides more substantive latitude to pro se litigants, particularly with respect to the sufficiency of pleadings, the same cannot be said when it comes to adherence to proper procedure. "[I]t is axiomatic that pro se litigants, whatever their ability level, are subject to the same procedural requirements as

1    other litigants." *Muñoz v. United States*, 28 F.4th 973, 978 (9th Cir. 2022). Plaintiff here seeks

2    relief from missed deadlines—i.e., procedural omissions—and the Court holds him to the same

3    standard as a party represented by counsel. *See Briggs v. J.P. Morgan Mortg. Acquisition Corp.*,

4    No. C10-7998, 2011 WL 13217552, at *3 (C.D. Cal. Feb. 16, 2011) ("Although Plaintiff is

5    proceeding *pro se*, Plaintiff must still comply with the Court's procedural rules.") (citing

6    *Jacobsen v. Filler*, 790 F.2d 1363, 1364–65 (9th Cir. 1986)). Therefore, Plaintiff's pro se status

7    is immaterial to the issue at hand.[4]

8                                    *    *    *

9        Having considered the *Pioneer* factors, as well as other relevant circumstances, the Court

10   finds that Plaintiff's failure to respond to the Court's orders was not the result of excusable

11   neglect.

12                        **IV.    CONCLUSION**

13       Accordingly, Plaintiff's Motion for Extension of Time and Leave to File Amended

14   Complaint (Dkt. No. 70) is DENIED.

15       Dated this 10th day of July 2025.

16

17                                         Tana Lin
                                          United States District Judge
18

19

20

21
_____

22   [4] Moreover, not only is Plaintiff a well-educated, credentialed chiropractor, he is an experienced litigant in the Western District of Washington. Over the last three years, Plaintiff has appeared as a plaintiff in 14 cases in this District, before six different judges: *Rindal v. McDermott*, No. C22-1843; *Hart v. Wesen*, No. C23-309; *Hart v. Weyrich*, No. C23-311; *Hart v. Perkins*, No. C23-312; *Hart v. Perkins*, No. C23-404; *Hart v. McDermott*, No. C23-503; *Hart v. Janicki*, No. C23-832; *Hart v. Weyrich*, No. C23-884; *Rindal v. Dixon*, No. C23-1293; *Hart v. Janicki*, No. C23-1555; *Rindal v. Dixon*, No. C24-10; *Rindal v. Ferguson*, No. C24-890; *Rindal v. Washington*, No. C24-1805; and *Rindal v. Verge*, No. C25-523.

23

24